DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Lavelle Garrett, appeals from his conviction for criminal damaging in the Akron Municipal Court. This Court reverses.
 I {¶ 2} At approximately 2:30 a.m. on July 3, 2008, Garrett and two other individuals were asked to leave KC's Dugout due to their rowdiness and the fact that the bar was closing. Garrett protested, but eventually exited the bar. Two bartenders, John Bond and Curtis Thompson, watched Garrett and his friends on the bar's video monitor. The monitor was linked to several outdoor surveillance cameras, which were set up at various points around the building. When they viewed the monitor, Bond and Thompson were able to see Garrett and his two friends standing in the parking lot.
 {¶ 3} Subsequently, Bond went to the downstairs portion of the bar and heard noises "like rocks hitting the wall by the door." Accordingly, Bond proceeded to walk back upstairs *Page 2 
and to look at the bar's video monitor. Bond discovered that one of the cameras was no longer sending a video feed to the monitor, so he and Thompson opened the door to the bar's "fenced in *** smoking area" and peered through the fence. Both Bond and Thompson then saw Garrett throwing a rock at one of the surveillance cameras. Thompson called the police to report Garrett.
 {¶ 4} When the police arrived a short time later, Garrett and his friends were still in the parking lot. After Bond and Thompson gave their statements to the police, Thompson signed a complaint for criminal damaging, and the police arrested Garrett. Bond then called Kenny Cox, the owner of KC's Dugout, so that Cox could come to the store and give the police the video surveillance recording that depicted Garrett throwing rocks from the parking lot.
 {¶ 5} Garrett was charged with criminal damaging in violation of section 131.06 of the Akron City Code ("A.C.C."). The matter proceeded to a jury trial, and on August 13, 2008, the jury found Garrett guilty. The trial court sentenced Garrett to ninety days in jail and ordered him to pay a fine and restitution.
 {¶ 6} Garrett now appeals from his judgment and raises a single assignment of error for
our review.
 II Assignment of Error "THE CITY OF AKRON FAILED TO MEET ITS CONSTITUTIONAL BURDEN OF PROOF BEYOND A REASONABLE DOUBT ON THE CHARGE OF CRIMINAL DAMAGING, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT, WHEN IT FAILED TO INTRODUCE SUFFICIENT EVIDENCE THAT THE OWNER OF THE PREMISES DID NOT CONSENT TO THE EVENTS OF JULY 3, 2008."
 {¶ 7} In his sole assignment of error, Garrett argues that his conviction for criminal damaging is based on insufficient evidence. Specifically, he argues that the State failed to *Page 3 
present any evidence that he caused damage to the property of another "without his consent."
We agree.
 {¶ 8} "We must determine, as a matter of law, whether the evidence was legally sufficient to support a conviction." State v. Moneypenny, 9th Dist. No. 03CA0061, 2004-Ohio-4060, at ¶ 10, citing State v.Leggett (Oct. 29, 1997), 9th Dist. No. 18303, at *2.
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Smith, 9th Dist. No. 23288, 2007-Ohio-1680, at ¶ 3, quoting State v. Galloway (Jan. 31, 2001), 9th Dist. No. 19752, at *3.
"In essence, sufficiency is a test of adequacy." State v. Thompkins
(1997), 78 Ohio St.3d 380, 386.
 {¶ 9} A.C.C. 131.06(A)(1) provides that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without his consent *** knowingly, by any means[.]" "[W]here the language of a statute is clear and unambiguous, it is the duty of the court to enforce the statute as written, making neither additions to the statute nor subtractions therefrom." State v. Knoble, 9th Dist. No. 08CA009359, 2008-Ohio-5004, at ¶ 12, quoting Hubbard v. Canton CitySchool Bd. of Edn., 97 Ohio St.3d 451, 2002-Ohio-6718, at ¶ 14.
 {¶ 10} At trial, the State only presented the testimony of Bond, Thompson, and Officer Michael Orrand. Bond and Thompson, who were both bartenders at KC's Dugout, testified that they saw Garrett throw rocks at the bar's surveillance camera and that the camera was damaged as a result. Accordingly, the State produced sufficient evidence to show that Garrett knowingly
caused physical harm to the property of another. See A.C.C. 131.06(A)(1). The record reflects, *Page 4 
however, that the State failed to produce any evidence as to the additional element of consent. Specifically, the State failed to show that Garrett harmed the property of another "without his consent." Id.
 {¶ 11} By its plain language, A.C.C. 131.06 requires the State to prove as an essential element of a criminal damaging offense that an offender harmed another's property "without his consent." "It is fundamental that the prosecution must prove every necessary element of a crime charged beyond a reasonable doubt." State v. Gibson (May 6, 1998), 9th Dist. No. 18540, at *1, citing In re Winship (1970), 397 U.S. 358,364. While the State may rely upon circumstantial evidence to meet its burden of proof, "[w]e simply cannot fill in the blanks *** where the [S]tate has failed to meet its burden of proving all the elements [] beyond a reasonable doubt." State v. Heinish (1990), 50 Ohio St.3d 231,239, limited on other grounds by, State v. Jenks (1991),61 Ohio St.3d 259, paragraph one of the syllabus (concluding that both direct and circumstantial evidence are subject to the same standard of proof).
 {¶ 12} Here, neither Bond, nor Thompson owned the surveillance camera that Garrett damaged. Further, the record is devoid of any evidence that either Bond or Thompson had the authority to give or withhold consent on behalf of the camera's owner. Compare State v. Murray, 7th Dist. No. 07MA21, 2008-Ohio-1537, at ¶ 32-34 (concluding that there was sufficient evidence that company did not consent to damage when company's authorized representative testified to lack of consent). Bond testified that after he gave his statement to police he called Cox, the bar's owner, to come to the store and give the surveillance recording to the police. Thompson testified that after Cox discovered that the surveillance camera had been damaged, Cox had a company come out to repair the camera. Accordingly, it would appear that Cox was the individual with the authority to consent to matters regarding the surveillance cameras. Yet, *Page 5 
Cox did not testify at trial. Nor did he sign the complaint against Garrett. While it is true that Cox never stopped the investigation and that he spent the time and money to have the surveillance camera repaired, we cannot infer from these facts that the State met its burden to prove Cox's lack of consent beyond a reasonable doubt. SeeHeinish, 50 Ohio St.3d at 239 (noting that a court may not simply "fill in the blanks" when the State has failed to produce evidence on an essential element).
 {¶ 13} In State v. Stout (Apr. 16, 1997), 9th Dist. No. 96CA0038, this Court held that a jury could infer an owner's lack of consent from circumstantial evidence in the record. There, Stout and another man broke the windows of two semi tractor-trailers while trespassing in a transportation warehouse's parking lot. When the police arrived, Stout and his companion attempted to flee and to hide the tire iron that they had used to break the windows. At trial, the general manager of the transportation company testified that the parking lot was well-posted with "no trespassing" signs and that Stout did not have permission to be on the property. Stout's companion also testified that when the police arrived Stout "told him to get out of here so we don't get into trouble." Stout, at *1. This Court held on appeal that "[t]he young men's flight from police and attempt to hide the tire iron, coupled with the fact they were trespassing, circumstantially shows they did not have the owners' consent to damage the trucks." Id. at *1. Accordingly, this Court determined that Stout's criminal damaging conviction was based on sufficient evidence. Id. at *2.
 {¶ 14} Unlike Stout, the record in this case does not contain any circumstantial evidence that would suffice to demonstrate Cox's lack of consent. No one testified that Garrett lacked permission to be in the parking lot where police arrested him, and Garrett did not attempt to flee when the police arrived. Further, the record is devoid of any evidence that Cox posted signs on *Page 6 
his property or that Garrett ever made any statements that might indicate that he had acted without Cox's consent. This Court cannot infer Cox's lack of consent when the record contains neither direct, nor circumstantial evidence in support of that inference. See id.
 {¶ 15} This Court recognizes the absurdity of the result in this matter. Simple logic dictates that few property owners would consent to individuals hurling rocks at their cameras for the purpose of damaging them. Particularly when the property owner then troubles himself with having his camera repaired. Even so, we are bound to enforce the law as written when it is clear and unambiguous. Knoble at ¶ 12.[1] This is not an instance of a statute for which consent is a defense rather than an affirmative element of the State's case. Compare State v. Orban (Dec. 31, 1985), 11th Dist. No. 1515, at *5, citing State v. Martin (1946), 77 Ohio App. 553, 554 (both noting that the defense of consent negates the crime of rape). A.C.C. 131.06(A) clearly requires that the State prove, as an essential element of the offense of criminal damaging, that the property at issue was damaged without the consent of the owner. Moreover, the State could easily have satisfied this essential element by having Cox testify that he did not consent to the damage that Garrett caused. Because the State failed to produce any evidence of consent, *Page 7 
however, Garrett's criminal damaging conviction is based on insufficient evidence. Garrett's sole assignment of error has merit.
 III {¶ 16} Garrett's sole assignment of error is sustained, and his conviction for criminal damaging is vacated pursuant to that determination. The judgment of the Akron Municipal Court is reversed.
Judgment reversed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Akron Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellee.
DICKINSON, J., CONCURS.
[1] This Court notes that the Ohio Supreme Court recently determined that, despite the legislature's use of the phrase "a change in circumstances" in R.C. 3105.18, a party seeking to modify a spousal support order must demonstrate a substantial change in circumstances.Mandelbaum v. Mandelbaum, Slip Opinion No. 2009-Ohio-1222, at ¶ 28-34. Although the Supreme Court did not interpret R.C. 3105.18 according to its plain language, it noted that it reached this result because the requirement that a change in circumstances be substantial was a matter of well-settled law. Id. at ¶ 29-32. Specifically, the Court noted that "the general assembly will not be presumed to have intended to abrogate a settled rule of the common law unless the language used in a statute clearly supports such intention." Id. at ¶ 29, quoting State ex rel.Hunt v. Fronzier (1907), 77 Ohio St. 7, 16. Our reading of A.C.C. 131.06(A) convinces us that the statute does not run afoul of any well-settled law, such that we would need to look beyond the statute's plain language. Accordingly, we distinguish Mandelbaum on that basis. *Page 8