[Cite as *State v. Baldwin*, 2011-Ohio-4988.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.     10CA0078-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BENJAMIN BALDWIN | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.     07CRB00833-A |

DECISION AND JOURNAL ENTRY

Dated: September 30, 2011

MOORE, Judge.

**{¶1}** Appellant, Benjamin Baldwin, appeals the judgment of the Wadsworth Municipal Court. This Court affirms.

I.

**{¶2}** On the evening of August 16, 2007, Anthony Maroni drove his father's F-150 long-bed truck, which was licensed to his mother, to Amber Baldwin's home on College Street in the City of Wadsworth. He arrived around 11:45 p.m. and parked in back of the residence. He testified that the truck was in "perfect" condition and that there was "nothing wrong with it" when he arrived. Anthony had met Amber a few days earlier at T Bar in Wadsworth. When he arrived at her home he found Amber, as well as the appellant, Benjamin Baldwin, and Baldwin's friend, Eric, inside of the residence. Amber is Benjamin's sister. Anthony had never met Baldwin or Eric before that night. Amber took a shower shortly after Anthony arrived and got

ready to "hang out." Anthony, Amber, Baldwin, and Eric listened to music and drank beer in the residence.

{¶3} A few hours later, Baldwin went to the basement to do his laundry. Around 2:30 a.m., Anthony walked down to the truck to get some CDs. While walking up the exterior stairs to return to the residence, he saw a red spot on the wall near the top stair. He touched the spot and concluded that it was wet paint. At that time, Amber and Eric were in the living room. Anthony showed the red spot to Amber and they decided to clean the wall to avoid getting in trouble with Amber's landlord. They then noticed five to six red droplets of paint on the second or third step.

{¶4} After cleaning the wall, Anthony and Amber returned to the residence. Upon entering Amber's bedroom, they found Baldwin in the shower. When Baldwin stuck his head out of the shower to tell Amber he was in the shower, Anthony saw that Baldwin had red paint on his shoulder and back. Anthony and Amber spent the remainder of the evening in her bedroom. They awoke around 1:00 p.m. the next day, and Amber found a note allegedly from Baldwin. The note purportedly read: "Amber, me and Eric left. We will be back. I have to work at 5:00. And tell your new boyfriend that something happened to his truck last night and I stepped in it. That's why I had tracked red paint all over."

{¶5} After reading the note, Anthony testified that he ran straight to the truck and found the cap sliding window smashed, red paint all throughout the bed of the truck, and a red paint can next to the truck. Anthony called the police and the police arrived on scene to investigate. Anthony hand-wrote a purported copy of the note into the police report. The police took a series of photographs of the truck, a spot of red paint on the doorjamb to the basement and on the basement floor. There was red paint by the lock on the basement door. There were paint

cans on shelves in the basement, one of which appeared to be similar to the paint can outside of his truck, but in a different color. Red paint also appeared in the shower and on a towel in Amber's bathroom. Anthony testified that he found a white t-shirt in the bathroom that was "dripping" with red paint. He further testified that Baldwin had been wearing a white t-shirt at the beginning of the night. Anthony testified that he had not given anyone permission to damage the truck. After his father found out about the damage, Anthony was no longer allowed to drive the truck.

{¶6} On August 20, 2007, a complaint was filed against Baldwin in the Wadsworth Municipal Court for Criminal Damaging, a violation of R.C. 2909.06(A)(1). On February 19, 2010, Baldwin pled not guilty and the case was tried to a jury on April 29, 2010. On April 30, 2010, the jury found Baldwin guilty of criminal damaging. On June 11, 2010, Baldwin was sentenced to a total of 60 days in jail, which was suspended, one year of probation, 24 hours of community service, court costs, and restitution to Anthony in the amount of $1,100.

{¶7} Baldwin timely filed a notice of appeal. He raises two assignments of error for our review.

II.

### ASSIGNMENT OF ERROR I

"THE STATE VIOLATED THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT WHEN IT FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE PROPERTY OWNER DID NOT CONSENT TO THE PROPERTY DAMAGE FOR THE CRIME OF CRIMINAL DAMAGING PURSUANT TO R.C. 2909.06(A)."

{¶8} In his first assignment of error, Baldwin essentially argues that there was insufficient evidence to support the crime of criminal damaging because the State failed to prove that the property owner did not consent to the damage. We do not agree.

{¶9} When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. To determine whether the evidence in a criminal case was sufficient to sustain a conviction, an appellate court must view that evidence in a light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶10} In *State v. Brewer*, "[t]he Ohio Supreme Court emphasized that the interest in the administration of justice dictates that the appellate court review the issue of sufficiency in consideration of all evidence presented by the state in its case in chief, whether such evidence was properly admitted or not." *State v. Freitag*, 185 Ohio App.3d 580, 2009-Ohio-6370, at ¶9, citing *State v. Brewer*, 121 Ohio St.3d 202, 2009-Ohio-593, at ¶19.

{¶11} Baldwin was convicted of criminal damaging, a violation of R.C. 2909.06(A), which states that "[n]o person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent[.]" Baldwin maintains that the State failed to prove lack of consent because the property owner, Rhonda Maroni, did not testify.

{¶12} The facts indicate that Rhonda's son, Anthony Maroni, testified in the State's case-in-chief. He was the complainant in this action, and had possession of the truck throughout the evening of the night in question. When asked how he arrived at the residence where the damage purportedly took place, he responded, "I drove my truck." After further questioning, he clarified that it was his father's truck, and that the title was in his mother's name. Anthony testified that he did not give anyone permission to damage the truck. He also testified that after

this event, his father "took the truck away from [him]" and that he was "without a vehicle for over a year[.]"

**{¶13}** Baldwin cites *Akron v. Garrett*, 9th Dist. No. 24412, 2009-Ohio-1522, to support his contention that the owner of the vehicle in a criminal damaging action must testify regarding consent. That case, however, is distinguishable on its facts. There, the defendant was convicted of criminal damaging for throwing rocks at the surveillance cameras of a bar. Id. at ¶3-5. The State only presented the testimony of bartenders at the establishment, and the responding officer. Id. at ¶10. The proprietor of the bar was not called to testify. See id. at ¶12. This Court concluded that "the State failed to produce any evidence as to the additional element of consent." Id. at ¶10. No argument was made that the bartenders had sufficient property interests in the cameras to protect them against criminal damaging.

**{¶14}** However, this Court has previously held that "the right of possession alone is a sufficient property interest to protect one against the crime of criminal damaging." *State v. Garber* (1998), 125 Ohio App.3d 615, 617. See also, *State v. Russell* (1990), 67 Ohio App.3d 81, 85 (concluding that "possession of a vehicle is a sufficient property interest to protect one against the crime of criminal mischief"); *Dayton v. Wells* (May 29, 1992), 2d Dist. No. 12862 (holding that "[t]here is no merit to the position that only the actual owner * * * may assert the damage or indicate the lack of consent to the unlawful act of appellant. As in the [criminal damaging] statute, the city ordinance prohibits damaging the proper[ty] of 'another.' This language includes all lesser degrees of possessory rights.").

**{¶15}** In addition, lack of consent to damage may be proved by circumstantial evidence. *State v. Maust* (1982), 4 Ohio App.3d 187, 188-89 (noting that "the gravamen of the complaint is not directed to one who is the *owner* of a motor vehicle which has been damaged. The statute

deals with 'physical harm to any property of another.' R.C. 2909.06. Although not necessary to the issue raised in this case, it can be argued that a right of possession is a sufficient 'property' interest to protect one against the crime of criminal damaging."). In *Maust*, the victim had taken possession of the vehicle on the day of the alleged criminal damaging, but did not receive title until six days later. Id. at 188. The court concluded that it was not necessary to produce title of ownership to maintain the action, and that the circumstantial evidence demonstrated lack of consent by the victim. Id. at 188-89. See also, *State v. Stout* (Apr. 16, 1997), 9th Dist. No. 96CA0038.

{¶16} The Tenth District, in *In re Glenn* (Aug. 16, 1979), 10th Dist. No. 79AP-239, allowed the husband of the automobile owner to testify in a criminal damaging action that he had not given permission to anyone to damage the automobile, and to his knowledge his wife had not either. Id. at *2. The court did not require the record of title holder to testify as to her consent. Instead, the court acknowledged that the court could "further find from the circumstantial evidence that the owner of the automobile did not give consent to the damage of the automobile in view of all the circumstances." Id. See also, *Cleveland v. Bacsa* (Oct. 29, 1998), 8th Dist. No. 73519, at *6 (holding that the woman in possession of the vehicle had "a sufficient property interest to protect one against criminal damaging" and thus allowed the defendant, who in fact owned the vehicle in question, to be convicted of criminal damaging).

{¶17} In this case, there was circumstantial evidence that allowed the jury to conclude that the damage to the vehicle was done without the consent of the owner. The son of the vehicle owner testified that he was in possession of the vehicle and that he did not consent to the damage. As soon as he discovered the damage to the vehicle, he immediately reported it to the police. He further testified that once his parents discovered the damage, they took away his

rights to the vehicle. Circumstantial and direct evidence "possess the same probative value[.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. "Furthermore, if the State relies on circumstantial evidence to prove any essential element of an offense, it is not necessary for 'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" (Internal quotations omitted.) *State v. Tran*, 9th Dist. No. 22911, 2006-Ohio-4349, at ¶13, quoting *State v. Daniels* (June 3, 1998), 9th Dist. No. 18761, at *2.

{¶18} After viewing the evidence in the light most favorable to the State, we conclude that the trier of fact could reasonably find that the State met its burden of production and presented sufficient evidence to prove that Baldwin caused harm to the property of another without the other person's consent. Accordingly, his first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE TO USE UNAUTHENTICATED HEARSAY EVIDENCE IN VIOLATION OF OHIO RULE OF EVIDENCE 801."

{¶19} In his second assignment of error, Baldwin argues that the trial court committed plain error by admitting the contents of the note from Baldwin. We disagree.

{¶20} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error is only to be noticed "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. "This Court will apply Crim. R. 52(B) only if it appears on the face of the record that an error was committed, and the result of the trial clearly would have been different but for the alleged error." *State v. Dent*, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶6, citing *State v. Bock* (1984), 16 Ohio App.3d 146, 150.

**{¶21}** Baldwin argues that the trial court committed plain error by admitting the contents of the note allegedly written by him because the "State [] relied heavily on the note during trial to tie the circumstantial facts of the case together and implicate [] Baldwin." In particular, "the contents of the note placed [] Baldwin in contact with the paint which damaged [the vehicle.]" Because there was direct evidence that connected him to the paint, i.e., Anthony's testimony that he saw red paint on Baldwin's shoulder and back, the admission of the note as circumstantial evidence connecting him to the paint did not prejudice him. Any error would be harmless. Accordingly, his second assignment of error is overruled.

III.

**{¶22}** Baldwin's assignments of errors are overruled. The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

CARR, J.
CONCURS

BELFANCE, P. J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶23} I concur in the judgment. In my view, Mr. Maroni's testimony that he was in possession of his mother's truck and that he did not give permission for someone to damage it satisfied the permission element of R.C. 2909.06(A)(1). Accordingly, I believe the majority's discussion of circumstantial evidence is unnecessary.

APPEARANCES:

J. DEAN CARRO, Appellate Review Office, School of Law, The University of Akron, for Appellant.

PAGE C. SCHROCK, III, Attorney at Law, for Appellee.